No. 23-2101

# United States Court of Appeals
# for the Fourth Circuit

UNITED STATES EX REL. LISA WHEELER;

STATE OF NORTH CAROLINA EX REL. LISA WHEELER,

Plaintiffs-Appellants,

v.

ACADIA HEALTHCARE COMPANY, INC.;

CRC HEALTH, LLC;

ATS OF NORTH CAROLINA, LLC, D/B/A MOUNTAIN HEALTH
SOLUTIONS ASHEVILLE, D/B/A ASHEVILLE COMPREHENSIVE
TREATMENT CENTER, D/B/A MOUNTAIN HEALTH SOLUTIONS NORTH
WILKESBORO, D/B/A NORTH WILKESBORO COMPREHENSIVE
TREATMENT CENTER,

Defendants-Appellees.

**On Appeal From the
United States District Court for the Western District of North Carolina
in Case No. 1:21-cv-241-MR-WCM**

**BRIEF OF APPELLEES**

JENNIFER L. WEAVER
ANDREW F. SOLINGER
HOLLAND & KNIGHT LLP
511 Union Street
Suite 2700
Nashville, TN 37219
(615) 244-6380

*Counsel for Defendants-Appellees*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-2101    Caption: United States ex rel. Lisa Wheeler v. Acadia Healthcare Co., Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Acadia Healthcare Company, Inc.
(name of party/amicus)

_____

 who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Jennifer L. Weaver  Date: 3/13/2024

Counsel for: Appellee

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-2101        Caption: United States ex rel. Lisa Wheeler v. Acadia Healthcare Co., Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

CRC Health, LLC
(name of party/amicus)


who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Acadia Healthcare Company, Inc.
      CRC Group, LLC

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☑YES ☐NO
      If yes, identify all such owners:
      Acadia Healthcare Company, Inc.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?　☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)　☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?　☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?　☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Jennifer L. Weaver　　　　　　　Date: 3/13/2024

Counsel for: Appellee

- 2 -

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-2101__     Caption: __United States ex rel. Lisa Wheeler v. Acadia Healthcare Co., Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__ATS of North Carolina, LLC__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☑ YES ☐ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   Acadia Healthcare Company, Inc.
   CRC Group, LLC
   CRC Health, LLC

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO
   If yes, identify all such owners:
   Acadia Healthcare Company, Inc.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Jennifer L. Weaver          Date: 3/13/2024

Counsel for: Appellee

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

STATEMENT OF ISSUES ....................................................................................2

STATEMENT OF THE CASE................................................................................3

STANDARD OF REVIEW .....................................................................................6

SUMMARY OF ARGUMENT ...............................................................................7

ARGUMENT ..........................................................................................................8

I.   Wheeler Waived Her Fraudulent Inducement and False Certification Arguments by Not Objecting With Specificity.................................................8

   A. Wheeler's Objections to the Magistrate Judge's Recommendation Regarding Fraudulent Inducement and False Certification Were not Raised with Sufficient Specificity.................................................................8

   B. Wheeler's Passing References and Footnotes Were Insufficient to Preserve Her Fraudulent Inducement and False Certification Arguments for Appeal.................................................................................................11

II.  The District Court Correctly Determined That the Amended Complaint Failed to Allege a False Claim With Particularity......................................13

   A. None of Wheeler's Arguments on Appeal Change the Fact That She Failed to Satisfy Her Pleading Burden for Falsity. ...............................14

      1. The Amended Complaint fails to allege with particularity that any false claims were actually submitted. ............................................15

      2. The Amended Complaint fails to allege with particularity that any false claims were necessarily submitted. .......................................17

      3. The Amended Complaint fails to allege with particularity any false claims outside of North Carolina. ..................................................20

   B. Wheeler Did Not Adequately Plead Falsity for Her Fraudulent Inducement or False Certification Claims, Meaning that the District Court Was Correct to Dismiss Them Along With Her Other Causes of Action............................22

III. The District Court Correctly Determined That the Amended Complaint Failed to Establish Materiality.................................................................24

A. None of Wheeler's Arguments on Appeal Change the Fact That She Failed to Adequately Plead Materiality.................................................26

B. The District Court's Holding on Materiality Necessarily Applies to Wheeler's Newfangled Fraudulent Inducement and False Certification Arguments. ................................................................28

IV. The District Court Correctly Rejected Wheeler's Request to Adopt the Minority View on Reverse FCA Claims Stemming from a Contingent Penalty Provision in a CIA. ................................................30

CONCLUSION ................................................................33

STATEMENT REGARDING ORAL ARGUMENT ................................34

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................13, 25

*E. Shore Markets, Inc. v. J.D. Associates Ltd. Partn.,*
    213 F.3d 175 (4th Cir. 2000) ...................................................6

*Fairfax v. CBS Corp.,*
    2 F.4th 286 (4th Cir. 2021) .....................................................6

*Foster v. Univ. of Md.-E. Shore,*
    787 F.3d 243 (4th Cir. 2015) .................................................11

*Garnett v. Remedi Seniorcare of Va., LLC,*
    892 F.3d 140 (4th Cir. 2018) ...................................................6

*Harrison v. Westinghouse Savannah River Company,*
    176 F.3d 776 (4th Cir. 1999) .................................................24

*Harvey v. Cable News Network, Inc.,*
    48 F.4th 257 (4th Cir. 2022) ..................................................11

*Hicks v. Ferreyra,*
    965 F.3d 302 (4th Cir. 2020) .................................................12

*Hoyte v. American National Red Cross,*
    518 F.3d 61 (D.C. Cir. 2008).................................................32

*In re Under Seal,*
    749 F.3d 276 (4th Cir. 2014) .................................................11

*Nelson v. Adams USA, Inc.,*
    529 U.S. 460 (2000).............................................................12

*Orpiano v. Johnson,*
    687 F.2d 44 (4th Cir. 1982) ...................................................11

*Robinson v. Equifax Info. Servs., LLC,*
    560 F.3d 235 (4th Cir. 2009) .................................................12

*Ruscher v. Omnicare Inc.*,
No. 4:08-cv-3396, 2014 WL 4388726 (S.D. Tex. Sept. 5, 2014) ......................32

*Sara Quaresma ex rel. U.S. and State of R.I. v. Journey to Hope*,
No. 20-cv-451 (D.R.I. Apr. 14, 2023) ......................27

*Simoneaux v. E.I. duPont de Nemours & Co.*,
843 F.3d 1033 (5th Cir. 2016) ......................32

*Sturgeon v. Pharmerica Corp.*,
438 F. Supp. 3d 246 (E.D. Pa. 2020)......................32, 33

*The N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co.*,
740 F. Supp. 2d 694 (M.D.N.C. 2010) ......................19

*U.S. ex rel. Badr v. Triple Canopy, Inc.*,
950 F. Supp. 2d 888 (E.D. Va. 2013) ......................20

*U.S. ex rel. Bogina v. Medline Indus., Inc.*,
809 F.3d 365 (7th Cir. 2016) ......................21

*U.S. ex rel. Boise v. Cephalon, Inc.*,
No. 08-287, 2015 WL 4461793 (E.D. Pa. July 21, 2015)......................32

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*,
290 F.3d 1301 (11th Cir. 2002)......................21

*U.S. ex rel. Grant v. United Air., Inc.*,
912 F.3d 190 (4th Cir. 2018) ......................14, 17, 18, 20

*U.S. ex rel. Grubbs v. Kannegant*,
565 F.3d 180 (5th Cir. 2009) ......................19

*U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
No. 1:11-cv-29, 2015 WL 12991207 (S.D. Ohio Sept. 14, 2015) ......................31

*U.S. ex rel. Karvelas v. Melrose–Wakefield Hosp.*,
360 F.3d 220 (1st Cir. 2004)......................21

*U.S. ex rel. McClain v. Nutritional Support Servs., L.P.*,
No. 6:17-cv-2608, 2020 WL 2464655 (D.S.C. March 16, 2020)......................20

*U.S. ex rel. Nathan v. Takeda Pharm. N.A., Inc.*,
 707 F.3d 451 (4th Cir. 2013*)* ..............................................*passim*

*U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*,
 612 F.3d 724 (4th Cir. 2010) ..............................................21

*U.S. ex rel. Petras v. Simparel, Inc.*,
 857 F.3d 497 (3d Cir. 2017) ..............................................32

*U.S. ex rel. Schneider v. JPMorganChase Bank, National Association,
 et al.*,
 878 F.3d 309 (D.C. Cir. 2017) ..............................................32

*U.S. ex rel. Taylor v. Boyko*,
 39 F.4th 177 (4th Cir. 2022) ..............................................*passim*

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
 525 F.3d 370 (4th Cir. 2008) ..............................................14, 22, 26

*U.S. v. Massenburg*,
 564 F.3d 337 (4th Cir. 2009) ..............................................12

*U.S. v. Midgette*,
 478 F.3d 616 (4th Cir. 2007) ..............................................8, 10

*U.S. v. Molina Healthcare of Ill., Inc.*,
 17 F.4th 732 (7th Cir. 2021) ..............................................29

*U.S. v. Triple Canopy, Inc.*,
 775 F.3d 628 (4th Cir. 2015) ..............................................14

*U.S. v. Walgreen Co.*,
 78 F.4th 87 (4th Cir. 2023) ..............................................29

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
 579 U.S. 176 (2016) ..............................................24, 25, 29, 30

*Wahi v. Charleston Area Med. Ctr., Inc.*,
 562 F.3d 599 (4th Cir. 2009) ..............................................12

*Wards Corner Beauty Acad. v. Natl. Accrediting Comm'n of Career
 Arts & Scis.*,
 922 F.3d 568 (4th Cir. 2019) ..............................................11

**Statutes**

28 U.S.C. § 636(b)(1)......................................................................................8, 10

31 U.S.C. § 3729.......................................................................................................2

31 U.S.C. § 3729(a)(1)(G) ...................................................................................31

**Other Authorities**

42 C.F.R. § 8.12(f)(5) .......................................................................................23, 30

42 C.F.R. § 410.67(b)(3) .........................................................................................15

42 C.F.R. § 410.67(b)(4) .........................................................................................15

42 C.F.R. § 410.67(d) ...............................................................................................4

Fed. R. Civ. P. Rule 8(a) ....................................................................................13, 25

Fed. R. Civ. P. Rule 9(b) ...................................................................................*passim*

Fed. R. Civ. P. Rule 12(b)(6) ..................................................................................13

**INTRODUCTION**

An appeal is not a second chance to do-over and recharacterize unsuccessful claims and to raise arguments that were not addressed with the district court. This is precisely what Relator Lisa Wheeler ("Wheeler") attempts to accomplish in her Opening Brief. Rather than sticking with the arguments she presented to the trial court, she changes course in a last-ditch effort to salvage her woefully deficient claims. Wheeler transforms what were passing references and footnotes before the district court into pages and pages of arguments before this Court. This approach is flawed both procedurally and substantively. Procedurally, Wheeler waived any objections to the magistrate judge's memorandum and recommendation that she did not specifically raise with the district court. Substantively, none of Wheeler's newly raised arguments present a basis to overturn the district court's well-reasoned determination.

The scheme Wheeler alleges relates to group therapy for patients receiving treatment for opioid addiction. Despite the fact that group therapy is not a required service and that she cannot allege with any particularity that group therapy was ever billed to a federal healthcare program, the entirety of Wheeler's case rests on allegations of deficiencies in the group therapy provided by Acadia. Wheeler does not identify any bills submitted for group therapy that did not actually occur or demonstrate any government-imposed obligation to provide group therapy to every

1

patient. There can be no falsity for purposes of a False Claims Act (31 U.S.C. § 3729, "FCA") violation where there was no false representation that group therapy was provided. Likewise, Wheeler cannot establish materiality where there is no evidence that any federal healthcare program payment decision was influenced by the alleged absence of a form of therapy that was not specifically required. None of the creative ways Wheeler attempts to recast her claims on appeal can overcome these fundamental deficiencies, and this Court should reject her efforts to concoct an FCA violation where none exists.

**STATEMENT OF ISSUES**

The questions on appeal are:

1. Whether Wheeler waived arguments related to fraudulent inducement and false certification by not objecting with specificity to the magistrate judge's recommendation to dismiss her claims.

2. Whether the district court was correct that the Amended Complaint failed to allege a false claim with the requisite particularity.

3. Whether the district court was correct that the Amended Complaint failed to allege materiality with the requisite particularity.

4. Whether the district court was correct that a contingent penalty provision in a corporate integrity agreement cannot form the basis of a reverse false claim when the Government has not invoked that provision.

**STATEMENT OF THE CASE**

Acadia Healthcare Company, Inc., the parent company of CRC Health, LLC ("CRC Health") and ATS of North Carolina, LLC ("ATS") (together "Acadia" or "Defendants") provides behavioral health services in more than 230 facilities across 39 states, serving approximately 70,000 patients per day. JA019-020. Wheeler once worked for Acadia—in one state, at one clinic, in a role that had nothing to do with billing or with the provision of group therapy. *See* JA018-019. From that vantage point, and largely based on nothing more than information and belief, she attempts to describe 810 paragraphs' worth of fraudulent billing practices involving Medication-Assisted Treatment ("MAT"). *See* JA006-123. The essence of Wheeler's Amended Complaint is that Acadia submitted false claims to the Government by failing to provide group therapy and avoided an obligation to pay penalties to the Government under Acadia's prior Corporate Integrity Agreement ("CIA"). JA113-122. After investigating Wheeler's allegations, the Government declined to intervene. JA019-020.

In North Carolina, Acadia provides MAT for opioid addiction at several clinics, including Asheville CTC—the sole facility where Wheeler worked. JA019. Wheeler's job at the Asheville facility largely consisted of providing physical assessments of patients and prescribing medication. JA079. She never provided

3

group therapy, managed the provision of therapy, or had any involvement with billing at any of Acadia's facilities. JA079, JA088.

MAT is a critical tool in combatting the opioid epidemic and is covered by multiple federal healthcare programs. Medicare began covering MAT services on January 1, 2020. JA043. For Medicare, MAT services are billed using a bundled code that encompasses all *potential* treatment services, including medication dispensing and administration, counseling, therapy, and drug testing. JA045. Initially, CMS proposed a rule that would have required providers to render at least 51% of the services in a patient's treatment plan each week in order to bill. JA041-042. Ultimately, CMS discarded that rule, instead "adopt[ing] a rule that only required *one* Opioid Use Disorder treatment service be provided during a weekly episode of care in order to bill Medicare for the entire weekly bundle of services." JA042; *see* 42 C.F.R. § 410.67(d). Because of this change, if *any other* Opioid Use Disorder treatment service is provided to a patient undergoing MAT, then group therapy is not *required*.

Pricing for the bundled codes is "heavily based on the drug component of the treatment provided," and reimbursement does not differ based on how many ancillary services—such as group therapy—are provided. JA044-047. North Carolina Medicaid also covers MAT services, including group therapy, on a fee-for-service basis. JA049-050. But, North Carolina Medicaid regulations do not require

4

every Medicaid patient to receive every MAT service. *See* JA079 ("Patients' treatment plans indicate the *frequency* and *type* of counseling services that must be provided.") (emphasis added). The same is true for all of the other federal healthcare programs Wheeler mentions in her Amended Complaint. They all *cover* group therapy for patients, but not one *requires* it for all patients. *See* JA053-058.

In addition to her group therapy allegations, Relator alleges a reverse false claim based on her belief that Acadia owed an obligation to the Government under its CIA. JA119-120. As the result of a totally unrelated FCA settlement in West Virginia in 2019, Acadia entered into the CIA with the Office of Inspector General for the United States Department of Health and Human Services ("HHS-OIG"). JA067. A copy of the CIA is publicly available, and Wheeler in no way suggests that she was involved in Acadia's compliance obligations under the CIA, had a role in any submissions to HHS-OIG, or has knowledge of what may have been stated in any reports submitted to HHS-OIG. JA067. She also does not allege that the Government ever invoked the contingent penalty provision in the CIA against Acadia. JA074-075.

Relator filed her original *qui tam* FCA Complaint under seal on September 10, 2021. JA001. After reviewing Relator's allegations and investigating for nine months, the Government declined to intervene. JA001. Relator elected to proceed with the declined case and served Acadia on July 27, 2022. JA002. On August 1,

2022, Relator filed her Amended Complaint. JA002. Acadia filed their Motion to Dismiss for Failure to State a Claim on September 16, 2022. JA003. After considering the parties' filings and holding a hearing, on July 27, 2023, the magistrate judge issued his memorandum and recommendation supporting dismissal of all of Wheeler's claims. JA004; *see generally* JA229. Two weeks later, Wheeler filed her objections to the memorandum and recommendation, which primarily focused on her presentment and false records claims. JA004; *see* SA007-017. The district court concurred with the magistrate judge's findings that Wheeler failed to plead falsity or materiality with the requisite particularity and dismissed the Amended Complaint with prejudice on September 18, 2023. JA005; *see* JA269.

## STANDARD OF REVIEW

The Fourth Circuit "'review[s] de novo the grant of a motion to dismiss for failure to state a claim,' applying the same standards as the district court." *Fairfax v. CBS Corp.*, 2 F.4th 286, 291 (4th Cir. 2021) (quoting *Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 142 (4th Cir. 2018)). This means that the Court "must take the *facts* in the light most favorable to the plaintiff." *E. Shore Markets, Inc. v. J.D. Associates Ltd. Partn.*, 213 F.3d 175, 180 (4th Cir. 2000) (emphasis added). However, the Court "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

## SUMMARY OF ARGUMENT

Wheeler's objections to the magistrate judge's memorandum and recommendation did not include *any* substantive arguments related to fraudulent inducement or false certification—let alone specific arguments indicating that these claims required distinct analyses apart from the rest of her claims. She therefore waived her separate arguments related to fraudulent inducement and false certification. Even if Wheeler had preserved such arguments, they would fail for the same reasons as her presentment and false record claims. The magistrate judge and district court concluded that the Amended Complaint did not adequately plead falsity or materiality on the basis of insufficient group therapy because Wheeler did not identify any bills for group therapy or identify any blanket requirement for group therapy to be provided in order to bill federal healthcare programs for MAT. Despite Wheeler's efforts to recharacterize her arguments on appeal, this reasoning applies with equal force to her fraudulent inducement and false certification claims, as the provision of group therapy for all patients is not a condition of certification or an affirmative requirement imposed by any regulation. Wheeler's reverse false claim argument fares no better because she urges the Court to adopt the unpersuasive minority position that a contingent penalty provision in a CIA that was never invoked by the Government should nonetheless be considered an obligation to pay

7

the Government. Accordingly, the district court correctly dismissed all of Wheeler's claims, and this Court should affirm that judgment.

**ARGUMENT**

**I.** **Wheeler Waived Her Fraudulent Inducement and False Certification Arguments by Not Objecting With Specificity.**

Despite having the opportunity and obligation to do so before the district court, Wheeler failed to provide any substantive arguments related to her fraudulent inducement (Count V) and false certification (Count IV) claims. Now, in a change of tact, Wheeler relies on these claims as the crux of her Opening Brief. Her new arguments are both too little and too late, and this Court should disregard them.

**A.** **Wheeler's Objections to the Magistrate Judge's Recommendation Regarding Fraudulent Inducement and False Certification Were not Raised with Sufficient Specificity.**

Under the Federal Magistrate Act, a district court must "make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, as the district court noted, "[i]n order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" JA265 (quoting *U.S. v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). Wheeler generally objected "to the Magistrate Judge's recommendation

that Counts I, II, IV, and V be dismissed,"[1]  but she did not provide a substantive explanation of why the magistrate judge's ruling encompassing counts IV and V was incorrect. SA007. Wheeler's only argument related to her fraudulent inducement claim came in a footnote:

> Moreover, in support of her fraudulent inducement claim, Plaintiff-Relator alleged that Defendants devised a scheme to falsify group therapy records and fail to provide individual therapy to induce SAMHSA, CARF, and Government Programs to certify, accredit, and contract with Defendants. Neither Defendants nor the Magistrate Judge have addressed this claim.

SA009 n.8 (internal citations omitted). Similarly, Wheeler only made passing references to her false certification claim in her objection. *See, e.g.*, SA011 ("For example, Relator's false certification claims are premised on Defendants' false certifications to Government Programs that they were complying with, *inter alia*, federal OTP regulations and the CIA."). These short asides stand in stark contrast with Wheeler's Opening Brief, which devotes *eighteen pages* to new arguments on fraudulent inducement and false certification that were not raised with the district court. *See* Appellant's Opening Brief ("AOB") at 27-45.

Remarkably, Wheeler repeatedly faults the district court for not separately considering these causes of action—despite her generalized objections that in no

---

[1] Wheeler does not appeal dismissal of Count III, her claim for conversion. *See* AOB at 18 n.4.

way suggested that they required distinct analyses apart from the rest of her claims. *See, e.g.*, AOB at 22 ("The district court said nothing specific about [the fraudulent inducement] claim. Instead, it grouped this claim together with others alleging presentment of false claims."); *id.* at 24 ("The district court did not address [the false certification] claim individually, either."). Wheeler acknowledged at oral argument on Acadia's motion to dismiss that these two claims are "separate theories" and that she had separate arguments on why her fraudulent inducement and false certification claims should survive, but again she failed to raise those same issues in objecting to the magistrate judge's report and recommendation. *See* JA202, JA214.

Wheeler—not the district court—bears the blame for not affirmatively addressing separate arguments for fraudulent inducement and false certification because "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge." *Midgette*, 478 F.3d at 621. Instead, "it contemplates that a party's objection to a magistrate judge's report be specific and particularized." *Id.* The district court was correct, both procedurally and substantively,[2] to not separately consider Counts IV and V because Wheeler's "general and conclusory objections [did] not direct the court to a specific error in the

---

[2] As detailed *infra* Sections II.B and III.B, the district court's findings on falsity and materiality apply with equal force to Counts IV and V.

magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

> **B. Wheeler's Passing References and Footnotes Were Insufficient to Preserve Her Fraudulent Inducement and False Certification Arguments for Appeal**.

Since Wheeler failed to raise substantive arguments related to fraudulent inducement and false certification with the district court, she waived them on appeal. In general, "if a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court." *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) (citation omitted); *see Wards Corner Beauty Acad. v. Natl. Accrediting Comm'n of Career Arts & Scis.*, 922 F.3d 568, 578 (4th Cir. 2019) ("[A] party must do more than raise a non-specific objection or claim to preserve a more specific argument on appeal."). Arguments like Wheeler's that are minimally addressed and relegated to footnotes are insufficient. *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 278 (4th Cir. 2022) ("[T]his Court has warned against ruling on a minimally addressed issue based on arguments only raised in a footnote, as it is unfair to the opposing party and would risk an improvident or ill-advised opinion on the legal issues raised. This reasoning has led district courts to decline to consider arguments only raised in a footnote.") (internal quotations and citations omitted); *see Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 n.8 (4th Cir. 2015) (concluding that a party waives an argument when

its discussion of that argument is limited to an isolated footnote); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009) (reaching the same conclusion); *see also Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000) ("[T]he general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts . . . requires that the lower court be fairly put on notice as to the substance of the issue.").

It is not enough that Wheeler raised arguments for falsity and materiality for her other causes of action because "an objection on one ground does not preserve objections based on different grounds," and those arguments are distinct from those she now marshals in her effort to resurrect Counts IV and V on appeal.[3] *U.S. v. Massenburg*, 564 F.3d 337, 342 n.2 (4th Cir. 2009). "It is well established that this court does not consider issues raised for the first time on appeal, absent exceptional circumstances." *Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009)) (cleaned up). No exceptional circumstances excuse Wheeler's failure to raise specific

---

[3] Wheeler has repeatedly agreed that "the [relevant] federal and state statutes apply identical standards," and she did not raise separate arguments related to her state law claims (Count VII). AOB at 4 n.1. Accordingly, to the extent she attempts to rely on such arguments in her reply brief, they have also been waived.

objections for Counts IV and V, and this Court should decline to consider her arguments related to these claims.[4]

## II. The District Court Correctly Determined That the Amended Complaint Failed to Allege a False Claim With Particularity.

To state a claim under the FCA, a relator must allege facts sufficient to satisfy four elements: "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." *U.S. ex rel. Taylor v. Boyko*, 39 F.4th 177, 188 (4th Cir. 2022). For purposes of surviving a Rule 12(b)(6) motion to dismiss under Rule 8(a), "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, "Rule 9(b) requires a plaintiff alleging fraud or mistake, like a False Claims Act relator, to 'state with particularity the circumstances constituting fraud or mistake.'"[5] *Boyko*, 39 F.4th at 189 (quoting Fed. R. Civ. P. 9(b)). "These circumstances are often referred to as the 'who, what, when, where,

---

[4] As explained *infra* Sections II.B and III.B, even if this Court considers these arguments, they fail to salvage Wheeler's claims.

[5] Conversion claims are not subject to this heightened pleading standard under Rule 9(b), but Wheeler does not appeal the dismissal of her conversion claim. AOB at 18 n.4.

and how' of the alleged fraud." *Id.* (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)). Because Wheeler did not state these circumstances with particularity for any of her claims sounding in fraud, the district court correctly dismissed the Amended Complaint.

### A. None of Wheeler's Arguments on Appeal Change the Fact That She Failed to Satisfy Her Pleading Burden for Falsity.

The "critical question" in any FCA case "is whether the defendant caused a false claim to be presented to the government[.]" *U.S. ex rel. Nathan v. Takeda Pharm. N.A., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013). A relator "cannot state a claim by doing nothing more than presuming that [defendants] submitted false claims." *U.S. v. Triple Canopy, Inc.*, 775 F.3d 628, 640 (4th Cir. 2015), *vacated and reinstated in part*, 857 F.3d 174. Rule 9(b) allows a relator to establish a false claim by either: (a) alleging "with particularity that specific false claims actually were presented for payment," or (b) alleging "a pattern of conduct that would necessarily have led to the submission of false claims to the government for payment." *U.S. ex rel. Grant v. United Air., Inc.*, 912 F.3d 190, 197 (4th Cir. 2018). Wheeler's Amended Complaint fails to allege with particularity that any false claims were actually or necessarily submitted by Acadia's North Carolina facilities by virtue of alleged deficiencies in group therapy—let alone that such claims were submitted

nationwide.[6] Thus, Wheeler failed to establish the most fundamental element of an FCA claim. *See Nathan*, 707 F.3d at 456-57.

> **1. The Amended Complaint fails to allege with particularity that any false claims were actually submitted.**

Wheeler is correct that "a claim expressly seeking payment for group therapy services, when no such services were provided, is a paradigmatic false claim." AOB at 46-47. However, she provides no evidence or specific factual allegations establishing that Acadia ever submitted such a claim. To "allege with particularity that specific false claims actually were presented for payment," the relator must, "at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained

---

[6] Despite her efforts to conflate group therapy and individual therapy in her Opening Brief, the crux of the Amended Complaint is alleged false group therapy records, and Wheeler does not provide any specific examples of deficient individual therapy. In fact, the Amended Complaint openly acknowledges that the rules for individual therapy via telephone were changed during the COVID-19 pandemic and that such therapy was provided by Acadia. *See* JA038 (quoting 42 C.F.R. § 410.67(b)(3), (4)) ("In light of the COVID-19 pandemic, the regulations allow counseling or individual/group by 'audio-only telephone calls' in 'cases where audio/video communication technology is not available to the beneficiary . . . .'"); JA080 ("Because of the COVID-19 pandemic, patients at the Asheville facility and, upon information and belief, Defendants' other OTP facilities can receive their counseling appointments by video or, if video is unavailable, by telephone."). Wheeler only passingly criticized the sufficiency of the individual telephone therapy that was provided—without describing specific phone calls, explaining how many calls she listened to, identifying a representative patient who received inadequate therapy, or providing any indication that video technology was available for particular beneficiaries. *See* JA104.

thereby." *Nathan*, 707 F.3d at 455-57. The only potentially representative claims Wheeler identifies are for a single patient—Patient 6.[7] JA267. She previously conceded that this patient was only a representative example for claims related to Medicare (Counts III, IV, and V)—and not for her presentment or false record claims (Counts I and II).[8] JA267. Even for Counts III, IV, and V, the district court agreed with the magistrate judge that "the allegations concerning Patient 6 [ ] do not contain the level of specificity required to constitute a representative claim" and that "even if the allegations regarding Patient 6 constituted a representative claim, the Plaintiff-Relator has failed to plausibly allege that the claim was false given that providers can submit a bill to Medicare for Medication Assisted Treatment ('MAT') services without providing group therapy." JA267. Notably, Wheeler herself acknowledged that Medicare does not require group therapy for MAT services under its bundled billing system, effectively admitting that the claims submitted for Patient 6 could not

---

[7] Wheeler references twelve other patients in the Amended Complaint. *See* JA082-084, JA087-089, JA097. However, she did not allege that these patients were enrolled in government healthcare programs, so any claims submitted for them are entirely irrelevant to the FCA.

[8] Wheeler has apparently forgotten that concession as she now unconvincingly argues that the records for Patient 6 demonstrate that *all* of her claims in the Amended Complaint satisfy Rule 9(b). *See* AOB at 56-58.

be false.[9] JA253. Accordingly, Wheeler failed to provide a *single* example of a false claim actually presented for payment.[10]

> ### 2. The Amended Complaint fails to allege with particularity that any false claims were necessarily submitted.

"[L]iability under the [FCA] attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme," so to overcome her failure to identify a specific false claim that was submitted to the government, Wheeler must show, in the alternative, that the scheme she alleges would "necessarily have led to the submission of false claims to the government for payment." *Nathan*, 707 F.3d at 456-57. Showing that Acadia's actions "could have led" to submission of a false claim is insufficient, because such a showing "leaves open the possibility" that false claims were not submitted.[11] *Grant*, 912 F.3d at 198.

---

[9] Wheeler suggests that the treatment plan for Patient 6 required group therapy, but this is false. This patient's updated treatment plan required that he "will continue to attend counseling sessions through telehealth or in person sessions" and merely suggested that he "*could* benefit from attending group thearpy (sic) as well." JA099 (emphasis added).

[10] Patient 6 is a dual Medicare and Medicaid beneficiary. JA094. Like Medicare, Medicaid does not affirmatively require group therapy for all patients, and Wheeler did not allege any specific facts demonstrating that Medicaid—instead of Medicare—paid for group therapy for Patient 6. *See* JA048-050; JA099. To the contrary, Wheeler acknowledged that "[p]ursuant to CMS's OTP Medicare Billing and Payment Fact Sheet, Medicare is the primary payor for OTP services for dually eligible beneficiaries (i.e., patients who have Medicare and Medicaid coverage)," and she did not explain why Acadia would have billed Medicaid, as the secondary payor, for Patient 6. JA061; *see* JA099-100.

[11] Alleged violations of recordkeeping obligations do not absolve Wheeler of her burden to demonstrate that false claims were actually or necessarily presented.

17

As the magistrate judge noted, "[w]ith respect to other Government Healthcare Programs, the Amended Complaint provides no specific information regarding any claims made to programs other than Medicare. . . . [and] does not explain which [ ] individuals were associated with which Government Healthcare Programs." JA253-254. The Amended Complaint also does not allege that any of the other federal healthcare programs, such as TRICARE, Champ VA, or Cures Act grants, affirmatively require group therapy for all patients.[12] *See* JA053-058. Nor does it describe any specific mechanism of Acadia's billing process that would have necessarily caused bills to be issued for services that were not rendered. *See* JA100-101.

Instead, with only one example of a Medicare patient whose bundled MAT services did not require group therapy, Wheeler makes the illogical leap that Acadia *necessarily* submitted claims for group therapy sessions that never occurred to all of

_____

*Nathan* and *Grant* clearly establish that false records alone are insufficient if a claim was not presented to the government for payment. *See Nathan*, 707 F.3d at 456-57; *Grant*, 912 F.3d at 198.

[12] Wheeler attempts to rely on a North Carolina requirement for "a minimum of once monthly individual *or* group therapy sessions during the induction and stabilization phases" of office-based opioid treatment to suggest there is an affirmative requirement to provide group therapy—despite the fact that the provision of individual therapy *without any group therapy* would clearly satisfy this requirement. AOB at 11 (emphasis added). Wheeler does not plead facts establishing that all of the individual therapy that was provided was inadequate or that *any* patient received neither group therapy nor individual therapy, when their treatment plan required it.

the other government programs.[13] *See* AOB at 56-58. The magistrate judge correctly rejected Wheeler's attempt to justify this leap through nothing more than unsupported conclusions pled "upon information and belief," and this Court should do the same. *See* JA254; *see also The N.C. Farmers' Assistance Fund, Inc. v. Monsanto Co.*, 740 F. Supp. 2d 694, 705 (M.D.N.C. 2010) (holding that a complaint did not satisfy Rule 9(b) because it "provide[d] neither the 'information' on which [the plaintiff] relies nor any plausible reasons for its 'belief.'"). Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted." *Nathan*, 707 F.3d at 456-57. Because she "le[ft] open the possibility" that false claims were not submitted,

---

[13] This leap renders Wheeler's attempted analogy to *U.S. ex rel. Grubbs v. Kanneganti* entirely unsuccessful. *See* AOB at 55 (citing 565 F.3d 180 (5th Cir. 2009)). In *Grubbs*, "[t]he complaint set[ ] out the particular workings of a scheme that was communicated directly to the relator by those perpetrating the fraud." *Grubbs*, 565 F.3d at 191. Further, it alleged "first-hand experience of the scheme unfolding . . . describing how the weekend on-call nursing staff attempted to assist [the relator] in recording face-to-face physician visits that had not occurred" and identified "the type of medical service or its Current Procedural Terminology code that would have been used in the bill." *Id.* at 192. Here, Wheeler does not claim that anyone told her Acadia was billing government programs for group therapy that was not provided, and her only discussion of billing codes relates to bundled billing for Medicare, which makes individual bills for group therapy impossible. *See* JA045-047. Thus, "[i]n contrast to cases such as *Grubbs*, [Wheeler's] claim does not involve an integrated scheme in which presentment of a claim for payment was a *necessary* result." *Nathan*, 707 F.3d at 461 (emphasis added).

Wheeler's Amended Complaint fails to satisfy the most basic element of an FCA violation—that any false claims were submitted. *Grant*, 912 F.3d at 198.

### 3. The Amended Complaint fails to allege with particularity any false claims outside of North Carolina.

In addition to rejecting Wheeler's claims based on conduct in North Carolina, the magistrate judge also found that she "has not alleged with sufficient specificity that these practices occurred at Defendants' other facilities." JA245. In reaching this conclusion, the magistrate judge rejected the sufficiency of Wheeler's general allegation "upon information and belief, that this practice is 'corporate policy.'" JA245 (quoting JA105). It is common sense that a relator "cannot use his allegation of a fraudulent scheme at one location involving one contract to create an inference that the scheme must have resulted in the submission of false claims at other locations governed by other contracts of which he lacked personal knowledge." *U.S. ex rel. Badr v. Triple Canopy, Inc.*, 950 F. Supp. 2d 888, 900 (E.D. Va. 2013), *rev'd in part on other grounds*, 857 F.3d 174 (4th Cir. 2017); *see U.S. ex rel. McClain v. Nutritional Support Servs., L.P.,* No. 6:17-cv-2608, 2020 WL 2464655, at *6 (D.S.C. March 16, 2020) (granting motion to dismiss where relator's allegations "baldly assert[ed] 'by information and belief, . . . that the fraud as pled is being perpetrated at all [defendant] locations in multiple jurisdictions in the United States of America . . . .'"). Wheeler only ever worked as an independent contractor at the Asheville CTC facility, and she never worked at any of Acadia's other facilities. *See* JA018-

019. She does not claim to have personal knowledge of any conduct at facilities outside of North Carolina, and instead relies on rumors and innuendo to support her bald assertion that the alleged fraudulent conduct "is occurring at Defendants' facilities . . . across the United States." JA093.

Rumor, innuendo, and unsupported conclusions "on information and belief" are insufficient for satisfying Rule 9(b). *See U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310-11 (11th Cir. 2002) (noting that where Rule 9(b) applies, pleadings cannot be based upon information and belief); *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) (noting that such pleading cannot support an allegation under the FCA where it "can mean as little as 'rumor has it that.'"). As the Fourth Circuit has noted, "Rule 9(b) plays an especially important role in the context of FCA *qui tam* actions" because "'a *qui tam* plaintiff, who has suffered no injury in fact, may be particularly likely to file suit as a pretext to uncover unknown wrongs.'" *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 732 (4th Cir. 2010) (quoting *U.S. ex rel. Karvelas v. Melrose–Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004)). Accordingly, the magistrate judge and district court correctly dismissed Wheeler's attempt to expand her insufficient claims in North Carolina into a nationwide fishing expedition.

**B.** **Wheeler Did Not Adequately Plead Falsity for Her Fraudulent Inducement or False Certification Claims, Meaning that the District Court Was Correct to Dismiss Them Along With Her Other Causes of Action.**

As with Wheeler's other claims, the Amended Complaint fails to establish the "who, what, when, where, and how" for fraudulent inducement or false certification. *See Boyko*, 39 F.4th at 189. Rather than alleging specific facts establishing separate schemes for fraudulent inducement and false certification, Wheeler attempts to use the same alleged deficiencies in group therapy to demonstrate that Acadia fraudulently obtained Substance Abuse and Mental Health Services Administration ("SAMHSA") certification and that *every* bill they submitted necessarily involved a false certification.[14] As Wheeler explains it, Acadia engaged in fraudulent inducement "by failing to disclose that they were not going to provide adequate therapy services [and] misled SAMHSA and its delegated accrediting bodies into certifying and accrediting defendants." AOB at 27. For false certification, she asserts that "[c]laims for payment for opioid treatment necessarily imply that services were

---

[14] This scattershot attempt to use the same underlying facts to support multiple theories of FCA liability is similar to one the Fourth Circuit disapproved of in *Wilson*. 525 F.3d at 379. In *Wilson*, the court rejected the relators' attempt to shift their theory of liability, noting that "plaintiffs' theory of the case is something of a moving target, and plaintiffs' inability throughout this litigation to settle on a straightforward reason for recovery is a revealing indication of the weakness of the underlying action." *Id.* As with the *Wilson* relators, Wheeler has unsuccessfully "tried to shoehorn what might have been an ordinary FCA claim [ ] into some sort of fraudulent inducement action." *Id.*

provided in accordance with the conditions of certification" and suggests that "these claims necessarily imply that therapy services were available to patients who needed them." *Id.* at 40. Similar to Wheeler's attempts to rewrite the billing requirements for her presentment and false record claims, both of these arguments rely on a wishful modification to the conditions of certification. Moreover, Wheeler alleges that Acadia did not make group therapy services "available to patients who *needed* them," but she provides no factual basis for this assertion. *Id.* (emphasis added). Rather, Wheeler alleges that a single patient who was enrolled in a federal healthcare program, Patient 6, did not receive group therapy—even though his treatment plan did not call for group therapy.

The certification standards that Wheeler relies on require the provision of "*adequate* substance abuse counseling to each patient *as clinically necessary*," and they say nothing about group therapy. 42 C.F.R. § 8.12(f)(5) (emphasis added). Wheeler provides no example of a patient who did not receive counseling that was deemed clinically necessary by a healthcare professional, much less an intent not to provide such counseling at the time Acadia obtained SAMHSA certification or re-certification. Accordingly, she failed to plead the "when and how" for fraudulent inducement—by not detailing the timing of any of the certifications or re-certifications, explaining how limited group therapy during COVID-19 could retroactively render prior representations fraudulent, or identifying any specific

23

fraudulent statements made to SAMHSA[15]—and the "how" for false certification—by not explaining how Acadia ever implicitly certified that they were providing group therapy to all patients when that was never required.[16] Therefore, the district court correctly dismissed the fraudulent inducement and false certification claims along with Wheeler's other claims because they depend upon "a requirement—the provision of group therapy—that never existed." JA269.

### III. The District Court Correctly Determined That the Amended Complaint Failed to Establish Materiality.

In addition to the factual deficiencies for falsity in the Amended Complaint, Wheeler failed to establish materiality—an aspect of FCA claims that has experienced increasing scrutiny over the past several years. This flaw alone is a sufficient basis to dismiss her complaint. To establish materiality, a relator must

---

[15] Beyond the deficient facts in the Amended Complaint, the cases Wheeler cites for her fraudulent inducement argument also do not support her argument that every claim submitted by Acadia violated the FCA. In *Harrison v. Westinghouse Savannah River Company*, the Fourth Circuit summarized relevant precedent for fraudulent inducement claims under the FCA and noted that in the cases it cited, "False Claims Act liability attached [] because of the fraud *surrounding the efforts to obtain the contract* or benefit status"—not because of later regulatory non-compliance. 176 F.3d 776, 788 (4th Cir. 1999) (emphasis added). The *Harrison* court found that the relator adequately pled a fraudulent inducement claim because, unlike Wheeler, he identified specific lies and misrepresentations connected to the defendant's *efforts to obtain a government contract* that "caused the government to pay 'claims' at a higher cost than it would have paid absent the fraud." *Id.* at 789.

[16] Accordingly, there is no basis to believe that the government "would probably—but wrongly—conclude that" group therapy was provided to all patients. *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 189 (2016).

allege facts showing that noncompliance with a particular statute, regulation, or contract was more than "minor or insubstantial," and that it was "so central to the services provided that the Government would not have paid these claims had it known of these violations." *Boyko*, 39 F.4th at 190 (quoting *Escobar*, 579 U.S. at 194, 196) (internal quotations omitted). The materiality standard serves an important role because the FCA "is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 579 U.S. at 194. Accordingly, the Supreme Court explained that this standard is "rigorous" and "demanding." *Id.* at 192, 194. To satisfy this demanding standard, a relator must plead specific facts that establish materiality with both plausibility (under Rule 8(a)) and particularity (under Rule 9(b)). *Id.* at 195 n.6. Materiality is not "too fact intensive for courts to dismiss [FCA] cases on a motion to dismiss." *Id.* And, "'naked[ly] assert[ing]' that a requirement is 'material,' without 'further factual enhancement,'" is insufficient because "[s]uch assertions do not permit us 'to infer more than the mere possibility of misconduct,' which necessarily 'stops short of the line' required by Rule 8(a), and thus far short of that required by Rule 9(b)." *Boyko*, 39 F.4th at 193 (quoting *Iqbal*, 550 U.S. at 557). The district court correctly determined that the Amended Complaint fails to adequately plead materiality because of its reliance on naked assertions of materiality.

**A.     None of Wheeler's Arguments on Appeal Change the Fact That She Failed to Adequately Plead Materiality.**

As the district court noted, Wheeler "cannot point to any indication from any federal healthcare program that the failure to provide group therapy—when this service was not required—was material to the Government's decision to pay a claim for MAT." JA269. The district court further observed that:

> Not only did Medicare not require group therapy during [the COVID-19 pandemic], but it would also appear that all government healthcare-related agencies would likely have frowned upon the conduct of any such group sessions. Hence, it appears that the Relator's pleading burden is all the higher to demonstrate the materiality of any misrepresentation or misstatement regarding group therapy.

JA269 n.1. Wheeler's arguments on appeal do not move the needle towards satisfying this heightened burden. The Fourth Circuit has made it clear that "a relator's complaint must contain 'specific facts' regarding '*how* the [fraudulent conduct or false statement] influenced the government's decision' to pay." *Boyko*, 39 F.4th at 190 (quoting *Wilson*, 525 F.3d at 379) (alteration in original). Instead, the Amended Complaint merely repeats the legal conclusion that the alleged false statements were material. *See* JA105; JA106; JA108; JA109; JA110; JA111 (Each repeating the conclusion that "[t]hese false express and/or implied certifications were material to the Government Healthcare Programs' decisions to pay Defendants' claims for individual and/or group therapy.").

26

Wheeler's attempt to remedy this deficiency by pointing to another case where the government actually decided to intervene, *Sara Quaresma ex rel. U.S. and State of R.I. v. Journey to Hope*, No. 20-cv-451 (D.R.I. Apr. 14, 2023), is unavailing. To start, the court in *Journey to Hope* has yet to rule on the motion to dismiss and weigh in on the Department of Justice's materiality argument. *See id.* Second, *Journey to Hope* is distinguishable from the instant action in numerous ways beyond the obvious difference that the Government declined to intervene in Wheeler's case. While the allegations in *Journey to Hope* also relate to MAT services, the allegations in that case are broader and more serious. The operative complaint there alleged that the defendants (1) failed to provide a majority of patients with individualized treatment plans, which—unlike group therapy—are *explicitly required* by federal and state law; (2) falsified records in preparation for State audits—which there is no allegation that Acadia did here; (3) actually submitted *specific, identifiable claims* to Medicaid for services that were not actually rendered; (4) falsified and backdated records; and (5) engaged in conduct that *actually harmed* their patients. *See id.* at ECF No. 11, ¶¶ 75-76, 80-81. Given these materially distinct underlying facts, *Journey to Hope* and the other factually distinct cases Wheeler relies upon do not rectify her failure to plead materiality with particularity in this case.

27

**B.** **The District Court's Holding on Materiality Necessarily Applies to Wheeler's Newfangled Fraudulent Inducement and False Certification Arguments.**

Although Wheeler did not raise these arguments in her objections to the magistrate judge's recommendation, the magistrate judge and district court's findings on materiality apply with equal force to Wheeler's new arguments for fraudulent inducement and false certification.[17] The magistrate judge expressly acknowledged that "OTPs must be certified by the Substance Abuse and Mental Health Services Administration ('SAMHSA'), be properly accredited, and must comply with state and federal opioid treatment regulations" and that Wheeler "asserts that the Government Healthcare Programs paid Defendants based on these certifications, and that these certifications were material to payment decisions." JA232; JA242. Nonetheless, the court was "not persauded (sic) that Relator has alleged with sufficient particularity that Defendants' false representations regarding the provision of group therapy *or, more generally, their compliance with applicable laws and regulations*, were material to any Government Healthcare Program's payment decisions." JA250 (emphasis added). More broadly, the district court rejected the assertion that "group therapy—*when this service was not required*—was material to the Government's decision to pay a claim," and this reasoning holds true

---

[17] Wheeler even acknowledged that the district court's ruling on materiality "arguably applies to fraudulent inducement." AOB at 30.

regardless of any ancillary certification and recordkeeping requirements. JA269 (emphasis added).

On appeal, Wheeler adopts the facially overbroad position that "*all* of the federal opioid treatment standards are material to claims for payment for opioid treatment programs." AOB at 43 (emphasis added). This flies directly in the face of the materiality standard the Supreme Court articulated in *Escobar*, which clarified that "even when a requirement is expressly designated a condition of payment, not every violation of such a requirement gives rise to liability." *Escobar*, 579 U.S. at 181. None of the cases Wheeler cites to stand for the proposition that a later violation of a condition of certification necessarily has a material impact on the Government's *prior* decision to grant certification or on *every* government payment decision thereafter.[18] Unlike in *Escobar*, Wheeler does not allege deficiencies in the licensing or training of counselors that would *necessarily* impact the value of counseling

_____

[18] For example, Wheeler's reliance on *U.S. v. Walgreen Co.*, 78 F.4th 87 (4th Cir. 2023) and *U.S. v. Molina Healthcare of Ill., Inc.,* 17 F.4th 732 (7th Cir. 2021) is unavailing. She in no way addressed the district court's clear explanation of why "[t]he *Walgreen* decision [ ] is entirely inapposite to the present case." JA268. *Molina* is also inapposite because the defendant in that case did not provide *any* of the required services for the capitated rates, and Wheeler does not deny that Acadia provided medications and other services covered by the MAT bundled billing. 17 F.4th at 739 ("Molina was not delivering SNF services to *anyone*, . . . [but] the Department continued to pay it the full capitation amount for SNF services—in essence, payments for *nothing*.") (emphasis added).

29

services that were unquestionably billed to the government.[19] *See Escobar*, 579 U.S. at 104-05. Instead, Wheeler tries to spin a condition of certification requiring "*adequate* substance abuse counseling to each patient as *clinically necessary*" into a requirement for group therapy that would necessarily impact the value of *all* of Acadia's MAT services—even those that did not require or were completely unrelated to group therapy. 42 C.F.R. § 8.12(f)(5) (emphasis added). This plainly stretches the "rigorous" and "demanding" standard for materiality beyond recognition. *Escobar*, 579 U.S. at 192, 194. Thus, all of Wheeler's materiality arguments fail under the reasoning articulated by the district court.

## IV. The District Court Correctly Rejected Wheeler's Request to Adopt the Minority View on Reverse FCA Claims Stemming from a Contingent Penalty Provision in a CIA.

To state a reverse false claim, a relator must plead with the requisite particularity that a defendant made or used a false record or statement material to an

---

[19] In her attempt to analogize to *Escobar*, Wheeler both misstates the holding in that case and misrepresents the facts in the present one. She claims that "Escobar was clear that the FCA imposes liability for 'misrepresenting compliance with a condition of eligibility to even participate in a federal program.'" AOB at 35 (quoting *Escobar*, 579 U.S. at 192). However, *Escobar* merely pushed back on the notion that "misrepresenting compliance with a condition of eligibility" *could not* be material. 579 U.S. at 192. Additionally, Wheeler falsely states that "defendants failed to provide *any* meaningful therapy or counseling at all." AOB at 34 (emphasis added). This statement is not just unsupported by the allegations in the Amended Complaint—it is directly contradicted by them. *See, e.g.*, JA090 ("During the COVID-19 pandemic, the Asheville facility began conducting non-contact individual therapy and/or counseling sessions."); JA091 ("*Frequently*, no actual therapy and/or counseling occurred during the call.") (emphasis added).

obligation to pay the Government or knowingly concealed or avoided that obligation. 31 U.S.C. § 3729(a)(1)(G); *see also, U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*, No. 1:11-cv-29, 2015 WL 12991207, at \*5 (S.D. Ohio Sept. 14, 2015) (dismissing a claim under § 3729(a)(1)(G) because relators "have not pled their reverse false claims with the particularity required by Rule 9(b)"). The closest the Amended Complaint comes to describing an "obligation" is in reciting the CIA's stipulated penalty provisions: "The CIA also provides for contractual remedies—including a range of stipulated monetary penalties—if Defendant Acadia and/or Defendant CRC breaches the terms of the CIA." JA074. This assertion alone cannot state a plausible claim for relief because Wheeler does not adequately identify any breach of the CIA that could have led to the imposition of penalties—much less any action by the Government to actually impose them. Wheeler merely reviewed the publicly-available CIA, quoted its provisions, and then baldly asserted that Acadia was liable for statutory penalties. This line of reasoning falls well short of Rule 9(b)'s particularity requirement.

Apparently recognizing this deficiency in her pleading, Wheeler contends that this Court must merely accept her conclusion that penalties were due under the CIA. AOB at 66 ("At least, that is true at the pleading stage, where the Court must take Wheeler's allegations as true—and therefore conclude that the penalties [under the CIA] are owed."). To support her tenuous position, Wheeler asserts that "the best

31

judicial authority agrees that a contractual obligation can support liability even when a party must take discretionary action to assert its rights against a counterparty—including in the context of CIAs." *Id.* at 26. Yet, she relies on two district court opinions adopting a *minority position* that is inconsistent with the way most courts have analyzed contingent penalties in the context of reverse FCA claims. *See Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 279 (E.D. Pa. 2020) (rejecting the holdings in *U.S. ex rel. Boise v. Cephalon, Inc.*, No. 08-287, 2015 WL 4461793 (E.D. Pa. July 21, 2015) and *Ruscher v. Omnicare Inc.*, No. 4:08-cv-3396, 2014 WL 4388726 (S.D. Tex. Sept. 5, 2014) as an unpersuasive minority position).

As the magistrate judge noted, the general rule articulated by the majority of courts is that "contingent exposure to penalties which may or may not ultimately materialize does not qualify as an 'obligation'" under the FCA. JA260 (quoting *U.S. ex rel. Schneider v. JPMorganChase Bank, National Association, et al.*, 878 F.3d 309, 315 (D.C. Cir. 2017)) (citing *Hoyte v. American National Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008)); *U.S. ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 507 (3d Cir. 2017) ("[U]nder the FCA provision's plain language, the [ ] defendants could not have 'knowingly and improperly avoid[ed] or decrease[d] an obligation' to pay . . . because the obligation did not yet exist."); *Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1038 (5th Cir. 2016) ("[C]ontingent penalties are not obligations under the FCA").

32

In the specific context of stipulated penalty provisions in a CIA, the most factually analogous case is *Sturgeon*, where the court analyzed a CIA with penalty language nearly identical to that in Acadia's CIA. *Compare Sturgeon*, 438 F. Supp. 3d at 279 ("the CIA between PharMerica and the government provides that failure to comply with the CIA '*may* lead to the imposition of . . . monetary penalties.'") (emphasis added), *with* JA145 ("CRC and OIG hereby agree that failure to comply with certain obligations as set forth in this CIA *may* lead to the imposition of . . . monetary penalties . . . .") (emphasis added). The *Sturgeon* court reasoned that such language "do[es] not describe an 'established duty' to pay money to the government [since] at the time of breach, the penalties are not yet due," and it held that "[b]ecause there is no 'established duty' until the government exercises its discretion to demand payment, the stipulated penalties are not 'obligations.'" *Sturgeon*, 438 F. Supp. 3d at 279. The magistrate judge and district court approved of this logical conclusion, and this Court should do the same. As such, the district court's dismissal of Wheeler's reverse FCA claim—alongside all of her other claims—should be affirmed.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed and the Amended Complaint should be dismissed with prejudice.

# STATEMENT REGARDING ORAL ARGUMENT

Acadia does not believe that oral argument is necessary as the facts and legal arguments are sufficiently presented in the briefs and record. But if the Court prefers to hold oral argument, that would be acceptable as well.

Respectfully submitted,

/s/ Jennifer L. Weaver
Jennifer L. Weaver
Andrew F. Solinger
Holland and Knight, LLP
511 Union Street
Suite 2700
Nashville, TN 37219
Telephone: (615) 850-8116
Fax: (615) 244-6804
Jennifer.Weaver@hklaw.com
Andrew.Solinger@hklaw.com

*Counsel for Defendants-Appellees*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23-2101          Caption: U.S. ex rel. Wheeler v. Acadia Healthcare Co., Inc.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓]   this brief or other document contains _____**8,315**_____ [*state number of*] words

[ ]   this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓]   this brief or other document has been prepared in a proportionally spaced typeface using
MS Word _____ [*identify word processing program*] in
Times New Roman, 14 pt. _____ [*identify font size and type style*]; **or**

[ ]   this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Jennifer L. Weaver

Party Name Appellees

Dated: 03/13/2024

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2024, this Appellees' Response Brief was filed electronically using the Case Management and Electronic Case Files ("CM/ECF") system and served via CM/ECF on all counsel of record.

One counsel of record who is not a registered CM/ECF user consented to service by e-mail. I certify that I served this brief by e-mail on Madeline Lea (mlea@ncdoj.gov), and a copy to her colleague Special Deputy Attorney General Steven McCallister (SMcCallister@ncdoj.gov).

/s/ Jennifer L. Weaver
Jennifer L. Weaver

*Counsel for Defendants-Appellees*

36